**Nos. 25-2635 & 25-2636**

# In the United States Court of Appeals for the Third Circuit

---

United States of America, *Appellant,*
*v.*
Julien Giraud, Jr.; Julien Giraud, III, *Appellees.*

---

United States of America, *Appellant,*
*v.*
Cesar Humberto Pina, *Appellee.*

---

On Appeal from the United States District Court for the District of New Jersey, Nos. 1:24-cr-768 & 2:25-cr-436
Hon. Matthew W. Brann

---

### *AMICUS CURIAE* BRIEF OF SEPARATION OF POWERS CLINIC IN SUPPORT OF APPELLANT UNITED STATES OF AMERICA

---

R. TRENT MCCOTTER
SEPARATION OF POWERS CLINIC
COLUMBUS SCHOOL OF LAW
THE CATHOLIC UNIVERSITY OF
  AMERICA
3600 John McCormack Rd.
Washington, DC 20064
(202) 706-5488
mccotter@cua.edu
Counsel for *Amicus Curiae*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES....................................................................................ii

INTEREST OF THE *AMICUS CURIAE*................................................... 1

SUMMARY OF THE ARGUMENT ........................................................ 2

ARGUMENT ......................................................................................... 5

I.   The District Court's Three Rationales for Narrowly Reading
     § 546's 120-Day Timeline Are All Unpersuasive............................ 5

     A.   The District Court Rewrote § 546—And Then Did Not
          Follow Its Own Rewrite ......................................................... 5

     B.   The District Court Conjured an Irrelevant Redundancy..... 10

     C.   The District Court Apparently Tried to Avoid an
          Impossible Scenario ............................................................ 12

II.  The District Court Begged the Question by Concluding That
     Successive 120-Day Appointments Would "Thwart" the Statute . 14

III. Separation-of-Powers Concerns Militate in Favor of Rejecting
     the District Court's Narrow Interpretation of § 546's 120-Day
     Clock .................................................................................... 15

CONCLUSION ................................................................................. 17

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Grand Jury Proc.*,
 671 F. Supp. 5 (D. Mass. 1987) ............................................................ 2

*Morrison v. Olson*,
 487 U.S. 654 (1988) ........................................................................... 15

**Statutes**

28 U.S.C. § 546 ........................................................... 1–12, 14–16

**Other Authorities**

Memorandum from Charles J. Cooper, Assistant Attorney
 General, Office of Legal Counsel, to Arnold I. Burns,
 Deputy Attorney General (Apr. 15, 1987) .............................................. 2

James A. Heilpern, *Interim United States Attorneys*, 28 Geo.
 Mason L. Rev. 187 (2020) ...................................................................... 9

Memorandum from James F. Hinchman, General Counsel of
 the General Accounting Office, to Al McCandless, U.S.
 Representative (Sept. 28, 1993) .............................................................. 2

Memorandum from Laurence S. McWhorter, Dir. Exec. Off.
 for U.S. Att'ys, to Edwin Meese III, Att'y Gen., Attaching
 a Congratulatory Letter to Samuel A. Alito, Jr., Upon His
 Appointment for the District of New Jersey for Signature
 (Dec. 28, 1987) ....................................................................................... 6

Letter from Edwin Meese, III, to President Ronald Reagan,
 July 6, 1987 ............................................................................................ 6

*New Jersey United States Attorneys*, U.S. Att'ys Off., Dist. of
 N.J., https://www.justice.gov/usao-nj/about/office-
 history#former_usas (last updated May 13, 2025) ............................... 7

Henry B. Hogue, Cong. Rsch. Serv., RS21412, *Temporarily
 Filling Presidentially Appointed, Senate-Confirmed
 Positions* (Jan. 25, 2008) ........................................................................ 2

## INTEREST OF THE *AMICUS CURIAE*[1]

*Amicus curiae* the Separation of Powers Clinic at The Catholic University of America's Columbus School of Law (previously at the Antonin Scalia Law School at George Mason University) provides students an opportunity to discuss, research, and write about separation of powers issues in ongoing litigation. The Clinic has submitted over fifty briefs in federal cases implicating separation of powers, including federalism and comity.

---

[1] No counsel for any party has authored this brief in whole or in part, and no entity or person, aside from *amicus curiae* and its counsel, made any monetary contribution intended to fund the preparation or submission of this brief. All parties consent to the filing of this brief.

## SUMMARY OF THE ARGUMENT

The government has indicated it intends to focus on the errors in the district court's interpretation of the Federal Vacancies Reform Act. *Amicus* focuses on the district court's mistaken interpretation of 28 U.S.C. § 546 and the separation-of-powers problems that result from it.

As relevant here, § 546(c)(2) states that an Interim U.S. Attorney "may serve until the earlier of … the expiration of 120 days after appointment by the Attorney General under this section."

Until the decision below, § 546(c)(2) had been widely understood to mean that any Interim U.S. Attorney could serve for up to 120 days, regardless of how long any prior Interim U.S. Attorney had served. For example, "between January 1993 and March 9, 2006, at least eight U.S. Attorney vacancies—three under the Clinton Administration and five under the Bush Administration—were filled through successive 120-day appointments by the Attorney General under the provisions of 28 U.S.C. § 546."[2]

---

[2] Henry B. Hogue, Cong. Rsch. Serv., RS21412, *Temporarily Filling Presidentially Appointed, Senate-Confirmed Positions* 6 n.23 (Jan. 25, 2008), https://tinyurl.com/sstahtws; *see also* Memorandum from James F. Hinchman, General Counsel of the General Accounting Office, to Al

But the district court below read § 546(c)(2) as saying "the Attorney General is vested with 120 total days to appoint an Interim United States Attorney from the date that she first invokes section 546(a)," and thus "[t]ermination of an appointment before the 120-day deadline does not allow another 120-day term." Slip Op. 30. In other words, there can be only one 120-day term, regardless of how many Interim U.S. Attorneys are appointed.

Immediately preceding Alina Habba's appointment as Interim U.S. Attorney, another individual had been appointed for about 26 days as Interim U.S. Attorney, meaning that—in the district court's view—the clock on how long Ms. Habba could serve as Interim U.S. Attorney was already ticking before she was appointed. Rather than being able to serve for 120 days as Interim U.S. Attorney, Ms. Habba was able to serve only about 94 days in that position, in the district court's view.

---

McCandless, U.S. Representative (Sept. 28, 1993), https://www.gao.gov/assets/b-254491.pdf; Memorandum from Charles J. Cooper, Assistant Attorney General, Office of Legal Counsel, to Arnold I. Burns, Deputy Attorney General (Apr. 15, 1987); *In re Grand Jury Proc.*, 671 F. Supp. 5, 7 (D. Mass. 1987) (it is "reasonable to interpret § 546(a) to permit such a second interim appointment").

3

Respectfully, the district court's interpretation of § 546 is wrong. The court gave three textual reasons for its interpretation, but none is persuasive. *See* Part I, *infra*. In fact, the district court did not follow the letter of its own interpretation, perhaps because it would lead to the absurd conclusion that the 120-day clock expired back in 1987. Nor did the district court follow the logic of its own holding, which would have shown that even if the court were right about § 546, then Ms. Habba can once again be appointed Interim U.S. Attorney.

All of this unnecessary confusion could have been avoided by simply reading § 546(c)(2) as any normal reader would: the 120-day clock starts when *that* Interim U.S. Attorney's appointment began, not when some *other* Interim U.S. Attorney's appointment began. The district court thought that this reading would "thwart[]" the statute. Slip Op. 27. But that is circular. If the statute allows for this—and it does—then it cannot thwart the statute. *See* Part II, *infra*.

Finally, even if there were ambiguities in § 546, they should be construed in favor of a broader appointment power by the executive branch over its own officials, at the expense of the judicial appointment power in § 546(d). *See* Part III, *infra*. But the district court did the

4

opposite, greatly expanding the judicial appointment power of executive officials, at the expense of executive appointment power.

This Court should reverse.

## ARGUMENT

### I. The District Court's Three Rationales for Narrowly Reading § 546's 120-Day Timeline Are All Unpersuasive.

#### A. The District Court Rewrote § 546—And Then Did Not Follow Its Own Rewrite.

The district court rejected the government's interpretation of § 546 primarily because the court said it would require "rewriting the unmodified term 'appointment' [in § 546(c)(2)] as 'her appointment' or 'that appointment.'" Slip Op. 25.

But it was the district court that rewrote the statute by transforming the term "appointment" into "*first* appointment." *See* Slip Op. 25. That reading is disfavored because § 546 repeatedly refers to "appoint" and "appointment," and in every situation it is clear that the term must be referring to *that specific person's* appointment, not somebody else's appointment. There is no reason to read "appointment" in (c)(2) in a manner contrary to its usage throughout § 546.

5

The court's interpretation also yields absurd consequences. The court concluded that "the 120-day clock begins running when the Attorney General first invokes section 546(a) and makes an appointment." Slip Op. 25. But it appears the Attorney General "first invoke[d] section 546(a)" to make an appointment to the office of U.S. Attorney for the District of New Jersey in *March 1987*, when Attorney General Ed Meese appointed Samuel Alito to be the Interim U.S. Attorney.[3] As the district court acknowledges, the relevant text of § 546 was the same in 1987 as it is now. Slip Op. 29. Then-U.S. Attorney Alito served in that role until he was confirmed by the Senate in December 1987.[4]

Under the district court's test, that must mean the 120-day clock expired almost 40 years ago: then-U.S. Attorney Samuel Alito used all 120 days. In the intervening years, Attorneys General have appointed

---

[3] *See* Letter from Edwin Meese, III, to President Ronald Reagan, July 6, 1987, Bates No. WH-002.

[4] *See* Memorandum from Laurence S. McWhorter, Dir. Exec. Off. for U.S. Att'ys, to Edwin Meese III, Att'y Gen., Attaching a Congratulatory Letter to Samuel A. Alito, Jr., Upon His Appointment for the District of New Jersey for Signature (Dec. 28, 1987), https://www.archives.gov/files/news/samuel-alito/accession-060-89-372/Congratulations-1987-box102-memoMcWhortertoAG-Dec28.pdf.

numerous Interim U.S. Attorneys in New Jersey, including under President George H.W. Bush (Michael Chertoff), President Bill Clinton (Faith Hochberg), President George W. Bush (Robert Cleary), and President Donald Trump in his first term (Craig Carpenito).[5] Under the district court's view, all of those appointments must have been invalid because the Attorney General had already used up the one-and-only 120 days, back in 1987.

The district court seemed to implicitly recognize that this would be a ridiculous outcome. We know that because, when applying its rule, the court did *not* actually start the 120-day clock when the Attorney General "first invoke[d] section 546(a)." Slip Op. 25. Rather, it appears the court restarted the 120-day clock each time the Attorney General invoked § 546(a) *after* there had been an intervening Senate-confirmed or court-appointed U.S. Attorney.

But that means the court's rewriting of § 546(c)(2) is far more substantive than it would admit. Rather than the seemingly simplistic rule that the clock starts when the Attorney General "first invokes"

---

[5] *See New Jersey United States Attorneys*, U.S. Att'ys Off., Dist. of N.J., https://www.justice.gov/usao-nj/about/office-history#former_usas (last updated May 13, 2025).

§ 546(a), what the court actually meant (with additions underlined) was the clock "begins running when the Attorney General first invokes section 546(a) and makes an appointment, <u>and that time resets after each intervening Senate-confirmed or court-appointed U.S. Attorney since the last time the Attorney General made an appointment to that office under section 546(a)</u>."

But none of that underlined portion is actually in the court's opinion. Again, it was the district court, not the government, that massively rewrote § 546.

There is another problem with the district court's view: even if it were right, Ms. Habba can now once again be appointed Interim U.S. Attorney. That is, even assuming the court were right that the allowable 120 days expired in early July 2025 and that the court's appointment of Desiree Grace was therefore authorized under § 546(d), then—under the district court's own framework—the President's subsequent termination of Ms. Grace would have reset the 120-day clock. And that clock would begin ticking again when the Attorney General appointed an Interim U.S. Attorney, who could be Ms. Habba herself, especially given that all

8

agree she did not serve a full 120 days during her prior stint as Interim U.S. Attorney.

Scholars have realized this is the natural reading of § 546: "If at the end of 120 days, the district court appoints someone not to the President's liking (or anyone other than his preferred candidate), he could fire them and order the Attorney General to once again fill the vacancy to his liking." James A. Heilpern, *Interim United States Attorneys*, 28 Geo. Mason L. Rev. 187, 226 (2020). That means the Attorney General could simply reappoint Ms. Habba as Interim U.S. Attorney.

Accordingly, the district court did not follow its rule as-announced *or* its rule as-applied. If it had followed its rule as-announced, the court would have realized it results in absurdities like the clock expiring in 1987. And if the court had followed the logic of its rule as-applied, then Ms. Habba can be Interim U.S. Attorney again because there has been an intervening court-appointed U.S. Attorney (who has since been terminated).[6] Instead, the court declined to follow its own interpretation or its own logic.

---

[6] The district court might say that § 546(a) inherently ties the clock resetting to when the office becomes "vacant"—but the court didn't do

9

These problems all disappear if one reads § 546(c)(2) as a normal reader would: the 120-day clock starts upon *that person's* appointment—and not upon some other person's prior appointment.

## B. The District Court Conjured an Irrelevant Redundancy.

The district court's second reason for discarding the government's interpretation of § 546(c)(2) is that (c) and (c)(2) both use the term "under this section," and "[i]f subsection (c)(2)'s bar is limited to the appointment described in (c), then restating 'under this section' is redundant because that is the only type of appointment to which it could apply." Slip Op. 25-26.

Even if "under this section" were redundant, that says nothing about *whose* appointment starts the 120-day clock. Simply pointing to some alleged redundancy does not give license to start rewriting other parts of the statute.

---

that, either. Rather, it started the clock once the Attorney General made a first *appointment* under § 546(a) *after* a vacancy. Further, recall the district court refused to read the unadorned word "appointment" in § 546(c)(2) to mean "this appointment," so it would also be inconsistent for the district court to suddenly claim that the unadorned word "vacan[cy]" in § 546(a) actually means "this current vacancy," rather than one that occurred back in 1987.

In any event, the repeated "under this section" is *not* redundant. The first "under this section" (in subsection c) is referring to the full universe of individuals appointed as Interim U.S. Attorneys, and then subsections (c)(1) and (c)(2) address two ways the Interim U.S. Attorney tenure will end: (c)(1) indicates that an Interim U.S. Attorney tenure will terminate once someone is confirmed by the Senate and appointed by the President "under section 541"; and then (c)(2) says that otherwise, the Interim U.S. Attorney can serve 120 days after their appointment by the Attorney General under § 546, before triggering the court-appointment process in § 546(d).

So when (c)(2) refers to "under this section," it is distinguishing the § 546 appointment process in (c)(2) from the § 541 appointment process just discussed in (c)(1). This is good, clear draftsmanship, not redundancy.

The district court also seemed to derive some meaning from the ordering of (c)(1) and (c)(2), Slip Op. 26, but that actually shows why the argument about redundancy is wrong. Congress included "under this section" in (c)(2) precisely because there is an intervening subsection (c)(1) that refers to a different appointment method. If the ordering were

11

different, then sure, maybe Congress would not have needed to repeat "under this section." But Congress didn't order it that way, which is exactly why there is no redundancy when Congress used "under this section" again in (c)(2).

Also, to the extent the district court wondered why Congress used "under this section" in the leading clause of § 546(c) (the "chapeau"), that language also serves a useful purpose: it makes clear that individuals currently serving as Interim U.S. Attorneys can *also* be confirmed by the Senate and appointed by the President. In other words, unlike the Federal Vacancies Reform Act's general bar on serving in a role while awaiting Senate confirmation, § 546 allows the same person to roll straight from Interim U.S. Attorney to Senate-confirmed U.S. Attorney. That makes especially clear why Congress used "under this section" in both (c) and (c)(2). It was not redundancy.

## C.    The District Court Apparently Tried to Avoid an Impossible Scenario.

The district court's third rationale was that § 546(c)'s use of "under this section" "clearly does not modify the … barring provision in § 546(c)(1)" (i.e., where someone is confirmed by the Senate and

appointed by the President), which is "benchmarked to an event unrelated to any specific person's interim appointment." Slip Op. 26.

This rationale is difficult to follow. Because it is tied to Senate confirmation and Presidential appointment, the (c)(1) provision doesn't include a timeline at all, so of course it says nothing about when the 120-day clock in (c)(2) begins to run. Also, it is obvious which "specific person's interim appointment" is affected when someone is confirmed by the Senate and appointed by the President to that same office. Slip Op. 26. It could only be the person *presently serving* as Interim U.S. Attorney. Again, it is unclear, but the district court seemed to think that a Senate-confirmed U.S. Attorney could somehow oust a *prior* Interim U.S. Attorney who was not currently serving as Interim U.S. Attorney—and then the court tried to interpret the statute to avoid that situation.

Statutes should be read naturally, not with some impossible situation in mind. And even if the district court's rationale here were something else, respectfully it is so difficult to follow that it should be accorded no weight on appeal.

## II. The District Court Begged the Question by Concluding That Successive 120-Day Appointments Would "Thwart" the Statute.

Although not reliant on any particular statutory text, the district court was also especially worried about the prospect of an Attorney General using successive appointments of 120 days (or maybe 119 days, to be safe) of different individuals to get through an entire presidential term without requiring Senate confirmation. Slip Op. 27 & n.114. The court claimed that such actions would "thwart[]" the statute. *Id.*

But that is circular. If the statute allows for successive 120-day appointments—and it does—then doing so cannot possibly "thwart" the statute. Nor does this somehow render pointless the 120-day limit. Even under the district court's view, the Attorney General could appoint *different people* each time, which would prevent the same person from being appointed Interim U.S. Attorney repeatedly in succession, without any intervening individuals.

The court said, "[T]here must be some limit to section 546(a) appointments, and the text tells us that the limit is 120 days." Slip Op. 27. True, except the court started counting the 120 days at the wrong time—and then refused to follow its own rule anyway. Thus, ironically,

14

it is the district court's interpretation that "thwarts" the statute by reading the 120-day provision so narrowly.

## III. Separation-of-Powers Concerns Militate in Favor of Rejecting the District Court's Narrow Interpretation of § 546's 120-Day Clock.

Even if § 546 were ambiguous, the Court should construe it in favor of a presumption that the power to appoint inferior executive officials should lie with the executive branch, not with the courts. To be sure, § 546(d) creates an exception to that presumption when a 120-day appointment expires, but the district court here dramatically widened that exception by concluding that the 120-day period expires so easily and cannot be reset—or at least cannot be reset without an intervening Senate-confirmed or court-appointed U.S. Attorney. By interpreting the 120-day period so narrowly, the court massively shifted appointment power from the executive branch to the judicial branch.

Although the Supreme Court has upheld a few cross-branch appointments when clearly authorized by statute, it has made sure to note that such inter-branch appointments are decidedly not "usual." *Morrison v. Olson*, 487 U.S. 654, 674 (1988). The Court further indicated that "vest[ing] the appointment power in the courts would be improper if

15

there was some 'incongruity' between the functions normally performed by the courts and the performance of their duty to appoint." *Id.* at 676. Given the important executive role performed by U.S. Attorneys, *Morrison* raises serious questions about the constitutionality of § 546(d)'s judicial-appointment power.

To lessen the risk of constitutional invalidity and separation-of-powers problems, any ambiguity in § 546 should be construed in favor of narrowing the triggers for judicial appointment of U.S. Attorneys, which necessarily means ensuring a broader power for the Attorney General to make Interim U.S. Attorney appointments. But the district court went out of its way to do the opposite, construing the statute against its ordinary and logical interpretation, and thereby maximizing the judiciary's appointment power at the expense of the executive branch's.

* * *

For all these reasons, the district court's interpretation and application of § 546 are wrong and should be reversed. To be clear, the government's arguments under the Federal Vacancies Reform Act are equally strong.

16

## CONCLUSION

This Court should reverse.

September 8, 2025                     Respectfully submitted,

                                     /s/ R. Trent McCotter
                                     SEPARATION OF POWERS CLINIC
                                     COLUMBUS SCHOOL OF LAW
                                     THE CATHOLIC UNIVERSITY OF
                                        AMERICA
                                     3600 John McCormack Rd.
                                     Washington, DC 20064
                                     (202) 706-5488
                                     mccotter@cua.edu
                                     Counsel for *Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the typeface requirements of Rule 32(a)(5) and the typestyle requirements of Rule 32(a)(6) because this brief was prepared in 14-point Century Schoolbook, a proportionally spaced typeface, using Microsoft Word. Fed. R. App. P. 29(a), 32(g)(1).

This brief complies with the type-volume limitation of Rule 29(a)(5) because it contains 3012 words, excluding the parts exempted under Rule 32(f).

The text of the electronic brief is identical to the text in the paper copies.

At least one of the attorneys whose names appear on this brief is a member of the bar of this Court.

The electronic version of this brief has been scanned for viruses using Security Intelligence Update for Microsoft Defender Antivirus Version 1.435.383.0, and no virus was detected.

/s/ R. Trent McCotter

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, an electronic copy of the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the Third Circuit using the appellate CM/EFC filing system and that service will be accomplished using the appellate CM/ECF system.

/s/ R. Trent McCotter