Nos. 25-2635 & 25-2636

# In the United States Court of Appeals for the Third Circuit

UNITED STATES OF AMERICA,
*Plaintiff-Appellant,*

*v.*

JULIEN GIRAUD, JR.; JULIEN GIRAUD, III
*Defendants-Appellees.*

UNITED STATES OF AMERICA,
*Plaintiff-Appellant,*

*v.*

CESAR HUMBERTO PINA
*Defendant-Appellee.*

On Appeal from the United States District Court
for the District of New Jersey
Nos. 1:24-cr-768 & 2:25-cv-436
(Hon. Matthew W. Brann)

**BRIEF FOR FORMER UNITED STATES ATTORNEYS
AS AMICI CURIAE IN SUPPORT OF APPELLEES**

Debra Loevy
Alexandra Wolfson
Loevy & Loevy
311 N. Aberdeen St.
3rd floor
Chicago, IL 60607
(215) 299-2000
debra@loevy.com

Benjamin B. Klubes
Rachael R Yocum
T. Luis P. de Guzman
Klubes Law Group
1717 K Street, N.W
Washington, DC 20006
(202) 753-5054
bklubes@klubeslaw.com

Andrew Levchuk
Andrew Levchuk
Counsellor at Law, LLC
26 S. Prospect St., Ste. 10
Amherst, MA 01002
(413) 461-4530
alevchuk@agllegalnet.com

*Counsel for Amici Curiae Former United States Attorneys*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................II

INTEREST OF AMICI CURIAE ........................................................................................ 1

SUMMARY OF ARGUMENT............................................................................................ 3

ARGUMENT ........................................................................................................................ 5

    I.  United States Attorneys Must Be Carefully Selected Because They Wield Broad Statutory Authority and Prosecutorial Discretion............ 5

    II.  Strict Adherence to the Federal Law Restrictions on Filling U.S. Attorney Vacancies Is Critical for the Proper Functioning of U.S. Attorney's Offices. ........................................................................................ 8

CONCLUSION ...................................................................................................................15

CERTIFICATE OF BAR MEMBERSHIP .......................................................................17

CERTIFICATE OF COMPLIANCE.................................................................................18

CERTIFICATE OF SERVICE ..........................................................................................20

# TABLE OF AUTHORITIES

**CASES**            **Page**

*Freytag v. Comm'r of Internal Revenue,*
501 U.S. 868 (1991) ................................................................ 8, 9

S. Rep. No. 105-250 ................................................................ 11

*United States v. Garcia*, 2025 WL 2784640 (D. Nev. Sept. 30, 2025) ...................... 13

*In re Persico*, 522 F.2d 41 (2d Cir. 1975) ................................................ 8

*Nat'l Labor Relations Bd v. SW General, Inc., dba Southwest Ambulance,*
580 U.S. 288 (2017) ................................................................ 5

**STATUTES**

5 U.S.C. § 3345 ................................................................*passim*

5 U.S.C. § 3346 ................................................................ 11

28 U.S.C. § 546 ................................................................*passim*

28 U.S.C. § 547 ................................................................ 6, 7

**OTHER AUTHORITIES**

Bonner*, The Federalization of Crime: Too Much of a Good Thing?,*
32 U. Rich. L. Rev. 905 (1998) ........................................................ 7

Department of Justice Manual 3-1.130 ................................................ 6

M. Rosenberg, *Congressional Research Service Report for Congress, The New
Vacancies Act: Congress Acts To Protect the Senate's Confirmation
Prerogative* 9 (1998) ................................................................ 12

Bradley T. Tennis, *Uniform Ethical Regulation of Federal Prosecutors*,
120 Yale L.J. 144 (2010) ................................................................ 3

Wiener, *Inter–Branch Appointments After the Independent Counsel: Court*

*Appointment of United States Attorneys*,
86 Minn. L. Rev. 363 (2001) .......................................................................... 7, 8

**INTEREST OF AMICI CURIAE**

The former United States Attorneys listed below have served as Presidentially-appointed United States Attorneys.[1] They have intimate knowledge of the workings of the United States Attorneys' Offices and the relationship of those offices to the larger Department of Justice community. U.S. Attorneys investigate the most complex crimes and try the most critical criminal prosecutions and civil actions brought by the federal government. Amici attest to the critical importance of expertise and continuity to the work of U.S. Attorneys' offices and the effective performance of the Assistant U.S. Attorneys.  U.S. Attorneys are vested by statute with extraordinarily broad discretion, and their vacancies should be filled only with experienced and competent personnel.  A detailed list of *Amici* and their relevant backgrounds follows:

- **Donald B. Ayer**, Deputy Attorney General(1989-1990); Principal Deputy Solicitor General (1986-88); U.S. Attorney for the Eastern District of California (1982-86); Assistant United States Attorney (1977-79).

---

[1] This brief is accompanied by a motion seeking leave to file. Under Fed. R. App. P. 29 (a)(4)(E), the undersigned counsel certifies that no counsel for a party authored this brief in whole or in part and that no person other than amici curiae made a monetary contribution intended to fund the preparation or submission of this brief.

- **Daniel G. Bogden**, U.S. Attorney for the District of Nevada (2001-2007, 2009-2017).

- **Harry Litman**, U.S. Attorney for the Western District of Pennsylvania (1998-2001).

- **John McKay**, U.S. Attorney for the Western District of Washington (2001-2007).

- **Michael D. McKay**, U.S. Attorney for the Western District of Washington (1989-1993).

- **Barbara McQuade**, U.S. Attorney for the Eastern District of Michigan (2010-2017).

- **Gary M. Restaino**, U.S. Attorney for the District of Arizona (2021-2025).

- **Donald K. Stern**, United States Attorney for the District of Massachusetts (1993-2001).

- **Stanley Twardy**, U.S. Attorney for the District of Connecticut (1985-1991).

- **William Weld**, U.S. Attorney for the District of Massachusetts (1981-1986).

2

## SUMMARY OF ARGUMENT

United States Attorneys wield broad authorities that can impact the lives, liberty and property of millions of people within their jurisdictions. Their job involves exercising prosecutorial discretion on whether and how to charge and prosecute crimes and otherwise enforce federal laws. The complexities of this job cannot be overstated. Federal prosecutions of white-collar crime, racketeering, money laundering, and public corruption involve intricate statutes and grand jury investigations that can run for months if not years on end. Federal civil litigation under the False Claims Act, the Anti-Kickback Statute, and other laws can be equally challenging. The job of the U.S. Attorney is not one that can be learned on the fly by a neophyte.

The job of a U.S. Attorney is unusually powerful, often involving life or death decisions for those within their jurisdictions. As a result of their unique authorities, federal prosecutors are governed by unique ethics rules beyond those that apply to others in the legal profession. *See, e.g.,* Bradley T. Tennis, *Uniform Ethical Regulation of Federal Prosecutors*, 120 Yale L.J. 144 (2010) (describing broad "array of ethical regulations" applied to federal prosecutors). To ensure continued public

trust in this powerful office, U.S. Attorneys must exercise the authorities of their office responsibly, based on the facts and the law, and free from actual or perceived political interference and favoritism.

For these reasons, Congress developed a strict statutory framework to limit temporary executive appointments of a U.S. Attorney where the position is not filled by a Senate-confirmed candidate. The statutory limitations were designed to ensure continuity of the office while incentivizing the selection of a nominee that can be confirmed by the Senate; to ensure that the acting U.S. Attorney is experienced and capable of responsibly exercising the authorities of the office until the position is filled by a Senate-confirmed appointee; and to prevent the politicization of the office by limiting the duration of temporary appointments and the pool of those who can be considered for additional temporary appointments.

Amici respectfully submit that strict adherence to the federal law restrictions on filling U.S. Attorney vacancies is critical for the proper functioning of U.S. Attorney's offices. The vacancy provisions of 28 U.S.C. § 546(a) and the Federal Vacancies Reform Act of 1998 ("FVRA") are drafted to ensure that experienced and competent prosecutors are

appointed as Acting United States Attorneys when no Presidentially-appointed candidate has been confirmed.  Strict adherence also guards against politicization of the prosecutorial function and protects public trust in U.S. Attorney's offices.  Amici categorically reject the Administration's claim that the President can legally bypass Congress's carefully drafted statutory scheme.  Acceptance of this argument would not only contravene statutory restrictions and the Appointments Clause of the United States Constitution, but as a policy matter, it would create the very danger that the Appointments Clause was drafted to address: the appointment of "unfit characters" to critical Executive Branch positions.[2]  Amici urge this Court to reject the government's arguments and affirm the decision of the district court.

## ARGUMENT

### I.  United States Attorneys Must Be Carefully Selected Because They Wield Broad Statutory Authority and Prosecutorial Discretion.

*Amici* Former United States Attorneys respectfully submit this brief to underscore that a United States Attorney's prosecutorial

---

[2] *Nat'l Labor Relations Bd v. SW General, Inc., dba Southwest Ambulance*, 580 U.S. 288, 293 (2017), quoting The Federalist No. 76, p. 457 (C. Rossiter ed. 1961) (A. Hamilton).

decisions impact the lives and safety of the citizens of his or her district. United States Attorneys' "professional abilities and the need for their impartiality in administering justice directly affect the public's perception of federal law enforcement." Department of Justice Manual 3-1.130.[3] The interplay of 28 U.S.C. § 546(a) and the FVRA—as correctly interpreted by the court below—helps to ensure that in the absence of a Presidentially-appointed and Senate-confirmed United States Attorney, U.S. Attorney's Offices will be temporarily run by competent and experienced professionals.

United States Attorneys' Offices serve as the cornerstone of federal criminal prosecutions, wielding broad statutory authority and prosecutorial discretion to combat sophisticated and dangerous criminals. Under 28 U.S.C. § 547, U.S. Attorneys are chief federal law enforcement officials within their respective districts and prosecute all offenses against the United States. U.S. Attorneys possess vast, largely unreviewable prosecutorial discretion that enables them to prioritize sophisticated criminal threats including white-collar crimes, cybercrimes, organized criminal enterprises, and complex multi-

---

[3] https://www.justice.gov/jm/jm-3-1000-organizationprior-approvals#3-1.130

6

jurisdictional conspiracies.  Because the scope and scale of federal-law enforcement expanded dramatically during the past 50 years, the United States Attorney can affect, for good or ill, the lives of almost every citizen of his or her district. *See, e.g.*, Bonner*, The Federalization of Crime: Too Much of a Good Thing?*, 32 U. Rich. L. Rev. 905, 920-25 (1998).

In addition, the statutory framework grants U.S. Attorneys not only criminal prosecutorial duties but also comprehensive civil litigation responsibilities, including defending federal officers and collecting fines and forfeitures for revenue law violations.  *See*  28 U.S.C. § 547. This dual role underscores the central importance of these offices in protecting federal interests across multiple legal domains.

It is a truism that "[w]ith law enforcement comes discretion . . . ." Wiener, *Inter–Branch Appointments After the Independent Counsel: Court Appointment of United States Attorneys*, 86 Minn. L. Rev. 363, 369 (2001). "For example, U.S. Attorneys routinely decide whether to focus limited investigative and prosecutorial resources on petty criminals, white-collar criminals, loan sharks, cyberspace pirates, or violent street gangs." *Id*. at 366. These judgments are informed by the United States

Attorney's prosecutorial judgment, and his or her assessment of the district's problems and vulnerabilities. *See* Wiener, *supra,* at 366 n. 12.

The importance of this discretionary authority becomes particularly evident in the context of sophisticated criminal threats. This ability to prioritize sophisticated criminal enterprises over routine violations represents a fundamental aspect of federal law enforcement strategy, allowing U.S. Attorneys to direct resources toward the most dangerous and complex criminal threats facing their districts. *See, e.g., In re Persico*, 522 F.2d 41 (2d Cir. 1975) (extended discussion of the complexities of organized crime prosecutions).

For the above reasons, competence, experience, and political neutrality must inform the U.S. Attorney's decisions.

## II. Strict Adherence to the Federal Law Restrictions on Filling U.S. Attorney Vacancies Is Critical for the Proper Functioning of U.S. Attorney's Offices.

As the district court noted, "[t]he 'manipulation of official appointments' had long been one of the American revolutionary generation's greatest grievances against executive power, because 'the power of appointment to offices' was deemed 'the most insidious and powerful weapon of eighteenth century despotism.'" Dkt. No. 144 at 12,

citing *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 883 (1991)

(citing G. Wood, *The Creation of The American Republic* 1776–1787, 79,

143 (1969)).  The district court continued:

> Through the Appointments Clause, the Constitution
> divides the power of appointments between the
> legislative and executive branches through the "default"
> rule of Presidential nomination and Senatorial consent
> (offices subject to this rule are often called "PAS"
> offices). That rule combines the benefits of vesting the
> selection of officers in a single person with the "check
> upon a spirit of favoritism in the President" that
> "cooperation of the Senate" offers. Thus, "[t]he Senate's
> advice and consent power is a critical 'structural
> safeguard of the constitutional scheme,'" protecting
> against unilateral appointment by the President of
> "candidates who ha[ve] no other merit than that . . . of
> being in some way or other personally allied to him, or
> of possessing the necessary insignificance and pliancy to
> render them the obsequious instruments of his
> pleasure."

Dkt. No. 144 at 13 (cleaned up).  For United States Attorneys, Congress

has preserved the constitutional default rule of Presidential appointment

and Senate confirmation.

When a U.S. Attorney position is vacant, Congress has placed

restrictions on interim appointments.  Specifically, 28 U.S.C. § 546

provides the Attorney General with the power to temporarily "appoint a

United States attorney for the district in which the office of United States

9

attorney is vacant." The Attorney General may not appoint "a person whose appointment by the President to that office the Senate has refused to give advice and consent," and "[a] person appointed as United States attorney under this section may serve until the earlier of" the Senate's confirmation of a Presidential appointee for the office, or "the expiration of 120 days after appointment by the Attorney General under this section." If the 120-day limit expires, "the district court for such district may appoint a United States attorney to serve until the vacancy is filled." Section 546 is consistent with the constitutional regime by limiting an unconfirmed interim U.S. Attorney to a brief 120-day term.

Congress has also enacted a more general statute to provide for the temporary execution of the functions and duties of a vacant PAS office: 5 U.S.C. § 3345, the Federal Vacancies Reform Act ("FVRA"). The FVRA helps to ensure that the officers temporarily filling vacancies have a level of experience and continuity appropriate to their positions. The FVRA gives the President three options when appointing acting officers. The default is that "the first assistant to the office of such officer shall perform the functions and duties of the office temporarily and in an acting capacity . . . ." *See* 5 U.S.C. § 3345(a)(1). The other subsections, 5 U.S.C.

§§ 3345(a)(2) and (a)(3), permit "the President (and only the President)" to direct another person to perform the functions and duties of the vacant office temporarily and in an acting capacity subject to the time limits of 5 U.S.C. § 3346. The President may designate "a person who serves in an office for which appointment is required to be made by the President, by and with the consent of the Senate," 5 U.S.C. § 3345(a)(2), or "an officer or employee of such Executive agency," provided that agency employee served in a position in that same agency for not less than 90 days "during the 365-day period preceding the death, resignation, or beginning of inability to serve" of their predecessor, 5 U.S.C. § 3345(a)(3).

The FVRA thus carries out the Framers' intent to prevent a President from using unconfirmed temporary appointments to fill critical federal positions with unqualified loyalists or inexperienced cronies merely intent on doing his bidding. The district court noted that the Senate Report on the FVRA "emphasizes the value of the first assistant's experience and independence . . . ." Dkt. No. 144 at 43, citing S. Rep. No. 105-250 at 12. Individuals falling within each of the three FVRA categories possess institutional knowledge and familiarity with agency operations, reflecting Congress's intent to preserve expertise during

11

leadership transitions. *See* M. Rosenberg, *Congressional Research Service Report for Congress, The New Vacancies Act: Congress Acts To Protect the Senate's Confirmation Prerogative* 9 (1998) ("It was designed to provide "optimal flexibility and administrative continuity . . .").

The contrary position taken by Appellant in this case is inconsistent with Congress's statutory restrictions on interim appointments. Section 546 restricts interim U.S. Attorney appointments to 120 days, after which the judges of the district select a U.S. Attorney. The FVRA allows for longer terms of interim service but places other restrictions on interim appointments. The restrictions ward against Presidential attempts to circumvent the Appointments Clause with interim appointments.

Appellant argues that notwithstanding the Appointments Clause, and in contravention of statutory restrictions on interim appointments, "Ms. Habba may participate in and supervise the defendants' prosecutions in her capacity as Special Attorney and First Assistant U.S. Attorney based on the Attorney General's delegation of authority to her." Br. at 14. There is, however, no authority for the Administration's lawless contention that "delegation" of authority from the Attorney

12

General nullifies the requirements of the Appointments Clause or statutory restrictions on interim appointments.

Recently, another federal district court addressed another convoluted series of actions used to appoint an acting U.S. Attorney for the District of Nevada that bears a remarkable similarity to the unlawful maneuvering in this case. *United States v. Garcia*, 2025 WL 2784640 (D. Nev. Sept. 30, 2025). As here, the Attorney General appointed an individual as the "first assistant" after the U.S. Attorney for Nevada position became vacant. The Attorney General then asserted that, by operation of the FVRA, the "first assistant" became the Acting U.S. Attorney. *Garcia,* 2025 WL 2784640 at *1.

The *Garcia* court rejected the same argument being advanced by Appellant (Br. 16-18), regarding subsection (a)(1) of the FVRA, 5 U.S.C. § 3345(a)(1), which provides that a "first assistant" may automatically become the acting officer upon the vacancy occurring if she meets certain criteria. As the Court explained, subsection (a)(1) is one of three subsections which specify carefully delineated circumstances when an acting officer may be appointed. *Garcia,* 2025 WL 2784640 at *8. It is the only subsection that is "self-effectuating"—the other two subsections

13

require Presidential action—but again with tightly constrained limits on the devolution of the Senate's constitutional confirmation authority. *Id.*

The Government's position here is directly contradictory to these statutory criteria. As the district court explained, the government's position is that "the President is free to select someone from outside the Government, with no experience in the relevant agency, and immediately imbue them with the functions and duty of a PAS office." Dkt. No. 144 at 39. This is fundamentally contrary to the Appointments Clause and statutory restrictions on interim appointments. It is particularly problematic given that at issue here is the appointment of the most senior federal law enforcement attorney in New Jersey, clothed with immense power and responsibility to ensure public safety and the fair administration of justice. Congress did not want neophytes assuming such authority, much less the "unfit characters" feared by the Framers.

As Appellant surely knows, this reasoning would give the Executive Branch *carte blanche* to completely bypass the Appointments Clause and the Senate. The Attorney General could appoint "Special Attorneys" in each of the 94 federal judicial districts and then delegate the powers of

14

the U.S. Attorneys in each district to those Special Attorneys, creating *de facto* and *de jure* U.S. Attorneys who were not confirmed by the Senate.

## CONCLUSION

As set forth above, U.S. Attorneys manage complex and ever-evolving tasks, and temporary appointments to the position must be consistent with the allocation of constitutional authority under the Appointments Clause and the statutory restrictions on interim appointments. The district court's decision should be affirmed.

Respectfully submitted,


*/s/Debra Loevy*

Debra Loevy
Alexandra Wolfson
Loevy & Loevy
311 N. Aberdeen St.
3rd floor
Chicago, IL  60607
(215) 299-2000


Benjamin B. Klubes
Rachael R Yocum
T. Luis P. de Guzman
KLUBES LAW GROUP
1717 K Street, N.W.
Washington, DC 20006
(202) 753-5054
bklubes@klubeslaw.com

Andrew Levchuk
Counsellor at Law
26 S. Prospect Street
Suite 10
Amherst, MA 01002
(413) 461-4530
alevchuk@agllegalnet.com


*Counsel for Amici*
*Former United States Attorneys*

16

## CERTIFICATE OF BAR MEMBERSHIP

I hereby certify that I am a member of the bar of this Court.


Dated: October 6, 2025            */s/Debra Loevy*

Debra Loevy
Loevy & Loevy
311 N. Aberdeen St.
3rd floor
Chicago, IL  60607
(215) 299-2000

**CERTIFICATE OF COMPLIANCE**

1.     The foregoing brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 29(d) because the brief contains [4,859] words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.     The brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 in Century 14-point font.

3.     In accordance with Third Circuit Local Appellate Rule 31.1(c), the text of this document as electronically filed is identical to the text of the document to be submitted in paper copy, subject to Federal Rule of Appellate Procedure 30(c)(2)(B).

4.     In accordance with Third Circuit Local Appellate Rule 31.1(c), this document has been scanned with a virus detection program, namely Malwarebytes, and no virus was detected.

Dated: October 6, 2025                 */s/Debra Loevy*
                                       Debra Loevy
                                       Loevy & Loevy
                                       311 N. Aberdeen St.
                                       3rd floor
                                       Chicago, IL  60607
                                       (215) 299-2000

19

**CERTIFICATE OF SERVICE**

I hereby certify that on October 6, 2025, I electronically filed the foregoing document with the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: October 6, 2025                    */s/Debra Loevy*
                                           Debra Loevy